# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| IN RE:  WIRE HARNESSES | Case No. 2:14-cv-14451-MOB-MKM Case No. 2:14-cv-00107-MOB-MKM |
| THIS DOCUMENT RELATES TO TRUCK AND EQUIPMENT DEALER CASES | |

## TRUCK AND EQUIPMENT DEALER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH CERTAIN DEFENDANTS, FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, AND TO AUTHORIZE DISSEMINATION OF CLASS NOTICE

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Truck and Equipment Dealer Plaintiffs ("TED Plaintiffs") respectfully move the Court for an order preliminarily approving proposed settlements totaling $2,365,000 with Defendants Sumitomo Electric Industries, Ltd. ("SEI"), Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.), Sumitomo Wiring Systems (U.S.A.) Inc. (collectively "Sumitomo"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech") (collectively, "Settling Defendants"), provisionally certifying the proposed Settlement Class, and approving the dissemination of class notice and to conduct a hearing for final approval of the Settlements with Settling Defendants.

In support of this Motion, TED Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law and the Declaration of William Wickersham.

The TED Plaintiffs and Settling Defendants do not request a hearing for this motion. The Settling Defendants do not oppose this motion and consent to the entry of the Proposed Order.

Dated:  September 8, 2016

/s/ J. Manly Parks
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Andrew R. Sperl (PA Bar #311467)
DUANE MORRIS LLP
30 S. 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com

*Counsel for Truck and Equipment Dealer Plaintiffs*

DM1\7189530.1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311<br>Hon. Marianne O. Battani |
| IN RE:  WIRE HARNESSES | Case No. 2:14-cv-14451-MOB-MKM<br>Case No. 2:14-cv-00107-MOB-MKM |
| THIS DOCUMENT RELATES TO TRUCK AND EQUIPMENT DEALER CASES | |

# MEMORANDUM OF LAW IN SUPPORT OF TRUCK AND EQUIPMENT DEALER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENTS WITH CERTAIN DEFENDANTS, FOR PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS, AND TO AUTHORIZE DISSEMINATION OF CLASS NOTICE

## PRELIMINARY STATEMENT

Truck and Equipment Dealer Plaintiffs' ("TED Plaintiffs") move for preliminary approval of proposed settlements totaling $2,365,000 with Defendants Sumitomo Electric Industries, Ltd. ("SEI"), Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.), Sumitomo Wiring Systems (U.S.A.) Inc. (collectively "Sumitomo"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech") (collectively, "Settling Defendants"). These settlements, taken together with the settlements that are the subject of another motion for preliminary approval pending before the Court, represent—if finally approved—a complete resolution of the TED Plaintiffs' claims in the Wire Harness case.

## STATEMENT OF ISSUE PRESENTED

1. Whether TED Plaintiffs settlement with Yazaki, embodied in the Settlement Agreement entered into on August 31, 2016 ("Yazaki Settlement Agreement"), and attached hereto as Exhibit 1, is fair, reasonable, and adequate and should be preliminarily approved?

   **Suggested Answer:   Yes.**

2. Whether the Court should stay the proceedings by TED Plaintiffs against Yazaki in accordance with the terms of the Yazaki Settlement Agreement?

   **Suggested Answer:   Yes.**

3. Whether TED Plaintiffs' settlement with Sumitomo, embodied in the Settlement Agreement entered into on August 31, 2016 ("Sumitomo Settlement Agreement"), and attached hereto as Exhibit 2, is fair, reasonable, and adequate and should be preliminarily approved?

   **Suggested Answer:   Yes.**

4. Whether the Court should stay the proceedings by TED Plaintiffs against Sumitomo in accordance with the terms of the Sumitomo Settlement Agreement?

   **Suggested Answer:   Yes.**

5.  Whether TED Plaintiffs' settlement with G.S. Electech, embodied in the Settlement Agreement entered into on August 29, 2016 ("G.S. Electech Settlement Agreement"), and attached hereto as Exhibit 3, is fair, reasonable, and adequate and should be preliminarily approved?

> **Suggested Answer:    Yes.**

6.  Whether the Court should stay the proceedings by TED Plaintiffs against G.S. Electech in accordance with the terms of the G.S. Electech Settlement Agreement?

> **Suggested Answer:    Yes.**

7.  Whether the Court should provisionally certify the Wire Harnesses Settlement Class it is defined herein under Federal Rules of Civil Procedure 23(a) and (b)(3)?

> **Suggested Answer:    Yes.**

8.  Whether the Court should authorize Settlement Class Counsel to provide notice of the Yazaki Settlement Agreement, Sumitomo Settlement Agreement, and G.S. Electech Settlement Agreement to Members of the VWHS Settlement Class (as it is defined in the respective Settlement Agreements)?

> **Suggested Answer:    Yes.**

9.  Whether the Court should appoint Lead Class Counsel for TED Plaintiffs for the respective Settlements?

> **Suggested Answer:    Yes.**

## <u>STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

- Fed. R. Civ. P. 23

- *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

- *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

- *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

- *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

- *In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

- *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

- *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

- *In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

- *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

- *Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................... ii

STATEMENT OF ISSUE PRESENTED ........................................................... ii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................. iv

INTRODUCTION ............................................................................................1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENTS ..........5

ARGUMENT ....................................................................................................9

I.      Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ....................................................9

        A.      The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ................................................. 12

        B.      The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel. ................................... 15

II.     The Proposed Settlement Class Should be Provisionally Certified  Pursuant to Rule 23. ...................................................................................................16

        A.      The Proposed Settlement Class Meet the Requirements of Rule 23(a). .............. 18

                i.       The Proposed Settlement Class are so Numerous That it is Impracticable to Bring All Class Members Before the Court .................. 18

                ii.      TEDP Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions. .......................................... 19

                iii.     TEDP Class Representatives' Claims are Typical of the Claims of the Members of the Proposed Settlement Class. ...................................... 21

                iv.      Proposed Settlement Class Counsel and TEDP Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class. ................................................. 22

        B.      The Proposed Settlement Class Meet the Requirements of Rule 23(b)(3). .......... 23

                i.       Common Questions of Law and Fact Predominate. ................................. 23

ii.    A Class Action is the Superior Method to Adjudicate These Claims. ................................................................................ 26

C.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).......... 27

III.   The Court Should Approve the Form and Manner of Notice to the Members of the TED Settlement Class. ....................................................................................27

A.    Notice Standards and Requirements. ................................................... 28

B.    The Proposed Manner of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1). ..................................................... 29

C.    The Proposed Form of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1). ..................................................... 30

III.   The Proposed Notices Provide Class Members With Sufficient Information About the Details of the Settlements. ..........................................................31

IV.    The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.......................................................35

CONCLUSION..................................................................................................36

## TABLE OF AUTHORITIES

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ........................................32

*Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242 (7th Cir. 1992)......................................................9

*In re Air Cargo Shipping Serv. Litig.*, No. 06-md-1775 (JG) (VVP), 2011 WL
    2909162 (E.D.N.Y., Jul. 15, 2011) .........................................................................................34

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006)..........................33

*In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609 (D. Kan. 1995) ...............................19

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996) ........................................................18, 21

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................23, 25, 27

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ...............................17, 24

*In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652 (D.D.C. 1979)......................................................14

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)...........................................................................29

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ..................................................................25

*In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222 (E.D. Pa. 2012) ........................................25

*Bobbitt v. Acad. of Reporting*, 2009 WL 2168833 (E.D. Mich. Jul. 21, 2009) ............................10

*Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013
    U.S. Dist. LEXIS 157242 (W.D. Ky. Nov. 1, 2013) ..............................................................16

*Brotherton v. Cleveland*, 141 F.Supp.2d 907 (S.D. Ohio 2001).....................................................34

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. .............................................................................26

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)..............................*Passim*

*Carlough v. Amchem Prods.*, 158 F.R.D. 314 (E.D. Pa. 1993) .......................................................29

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D.
    Mich. Sept. 13, 2013)......................................................................................17, 19, 21, 24

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822 (W.D. Pa. 1995) ............................................13

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878 (6th Cir. 1986) .................................................................................................10

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) ...................................................24

*Connectivity Systems Inc. v. National City Bank*, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ....................................................................................................34

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981) ............................................................................................................14

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 2008) .......................................................33

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91 (2d Cir. 2007) ....................................................................................................25

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) .................22

*Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095 (E.D. Mich. July 31, 2013) ................................................................................19

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................................................16, 32

*In re Diet Drugs Prod. Liab. Litig.*, 2002 WL 32154197 (E.D. Pa. Oct. 3, 2002) .......34

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010) ............................................................26

*In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534 (N.D. Ga. 1992) ....... 28-29

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006) ................................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................28

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) .....................................................................................................34

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ..................................................................................13

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ...........................................................28

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007) ............*Passim*

*Golden v. City of Columbus*, 404 F.3d 950 (6th Cir. 2005) ........................................18

*Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist.
LEXIS 173702 (E.D. Mich. Dec. 12, 2013) ........................................................9, 16, 19, 21

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)..................................28

*Hainey v. Parrott*, No. 1:02–cv–733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007)...................34

*Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist.
LEXIS 90892 (W.D. Ky. Nov. 6, 2008) ........................................................18

*Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S.
Dist. LEXIS 70471 (E.D. Mich. July 13, 2006) ........................................................10, 21

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)..........................9

*Larson v. Sprint Nextel Corp.*, No. 07-5325, 2009 WL 1228443 (D. N.J. April 30,
2009) ........................................................30

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)..................16

*Levva v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013) ..................24

*Liberte Capital Group v. Capwill*, 2007 WL 2492461 (N.D. Ohio Aug. 29, 2007)..................34

*Marcus v. Dep't of Revenue*, 206 F.R.D. 509 (D. Kan. 2002)........................................23

*Miller v. Univ. of Cincinnati*, 241 F.R.D. 285 (S.D. Ohio 2006) ..................18

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)..................29

*In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist.
LEXIS 17255 (E.D. Mich. Feb. 22, 2011)........................................................*Passim*

*In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist.
LEXIS 150427 (E.D. Mich. Dec. 13, 2011) ........................................................12

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS
140235 (E.D. Mich. Sept. 2, 2010) ........................................................17

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992)..................28

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ..................28

*In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473 (E.D. Mich.
Jan. 20, 2015)........................................................33

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450 (D.N.J.
1997) ........................................................31

ix

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D. N.Y. 1996)........................28

*Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706 (E.D. Mich. June 28, 2006) ...................................................................................................................10

*Reed v. Advocate Health Care*, 268 F.R.D. 573 (N.D. Ill. 2009) ...............................................25

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ...............................................13

*In re Revco Sec. Litig.*, 1992 WL 118800 (N.D. Ohio May 6, 1992) ...........................................34

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ..................................................13

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)..........................................23-26

*Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)...................................................................15

*In re Skelaxin Antitrust Litig.*, No. 12–cv–83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...................................................................................................................34

*In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ...........................................................................................................................32

*In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010) ...........................................................18

*In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002) ..........................................................................................................................34

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000)...................................................................21

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19, 2001)...............................................11

*Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) ...........................15

*In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661 (D. Kan. 2004) ..........................................................................................................................26

*In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980)...................................................14

*In re Urethane Antitrust Litig.*, 251 F.R.D. 629 (D. Kan. 2008) ................................................25

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)............................25

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251 (D.D.C. 2002) ..................................................25

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................................13

*In re Washington Public Power Supply System Sec. Litig.*, [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶94,326, 1988 WL 158947 (W.D. Wash. July 28, 1988) .................................................................................................................33

*Weigner v. The City of New York*, 852 F.2d 646 (2d Cir. 1988)...................................29

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)...............................................................................17, 19, 23, 25

## Statutes

15 U.S.C. § 1 .........................................................................................2-3, 20-22

## Other Authorities

6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522 (2d ed. 1990)........................................................................9

Fed. R. Civ. P. 23 ...........................................................................................*Passim*

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) .............................*Passim*

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) .....................................................................................10, 15, 19

Truck and Equipment Dealer Plaintiffs ("TED Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of settlements with Defendants Sumitomo Electric Industries, Ltd. ("SEI"), Sumitomo Wiring Systems, Ltd., Sumitomo Electric Wiring Systems, Inc. (incorporating K&S Wiring Systems, Inc.), Sumitomo Wiring Systems (U.S.A.) Inc. (collectively "Sumitomo"); Yazaki Corporation and Yazaki North America, Inc. (collectively, "Yazaki"); G.S. Electech, Inc., G.S. Wiring Systems, Inc., and G.S.W. Manufacturing, Inc. (collectively, "G.S. Electech") (collectively, "Settling Defendants"), provisional certification of the proposed Settlement Class, and authorization to disseminate class notice.

## INTRODUCTION

This multidistrict litigation arises from alleged conspiracies to fix the prices of certain automotive parts. Vehicle Wire Harness Systems are among the automotive parts at issue in these coordinated proceedings, *In re Automotive Parts Antitrust Litigation*, MDL No. 2311 ("MDL Proceeding"). For the purpose of the proposed settlement, the following definitions shall apply:

"**Trucks and Equipment**" means any heavy-duty (Class 8) trucks, medium-duty (Class 4, 5, 6, & 7) trucks, buses, commercial vehicles (excluding automobiles, light trucks, vans, sport utility vehicles, and/or similar motor vehicles typically sold by automobile dealerships), all-terrain vehicles, construction equipment, mining equipment, agricultural equipment, railway vehicles, materials handling vehicles, and other similar vehicles.[1]

---

[1] Although the settlement class definitions vary among the settlement agreements that are the subject of the instant Motion, the definition used here is sufficiently broad to encompass all of the settlement class definition variations.

"**Truck and Equipment Dealership**" means any person or entity who has purchased Trucks and Equipment for resale or lease.

"**Vehicle Wire Harness Systems**" ("VWHS") means any part or subcomponent included within the definition set forth in Paragraph 3 of the First Amended Class Action Complaint, Case No. 2:14-cv-14451 (May 29, 2015) [Doc. 64] ("VWHS Complaint"), whether sold separately, in combination, or as part of a module, assembly, or system.

The actions in the MDL Proceeding arise from alleged conspiracies by and among the motor vehicle industry's largest manufacturers, marketers, and sellers of vehicle parts to fix prices, rig bids, and allocate the market and customers in the United States for the sale of vehicle parts, including VWHS.

TED Plaintiffs were the first and have been the only plaintiffs to file class action complaints involving VWHS (or any other vehicle parts) on behalf of Truck and Equipment Dealerships.  The VWHS Complaint asserts claims for relief under the Sherman Act, 15 U.S.C. § 1 and various State antitrust, unjust enrichment, and consumer protection laws.  Counsel for TED Plaintiffs have been appointed Interim Class Counsel for the putative class of Truck and Equipment Dealerships in *In Re: Bearings*, No. 2:12-cv-00500 [Doc. 171], and pursuant to the Case Management Order entered in *In Re: Automotive Parts Antitrust Litigation* [Doc. 271], should be considered Interim Class Counsel for the similar putative classes in this case.  From the inception of these cases, undersigned counsel have represented the interests of the class of Truck and Equipment Dealerships, including overseeing and directing the prosecution and settlement of the claims brought against the Settling Defendants.  These proposed settlements are a result of those efforts.

DM1\7181318.4

TED Plaintiffs, and the class of Truck and Equipment Dealerships they represent, purchased new Trucks and Equipment in the United States that included one or more VWHS as a component part, or indirectly purchased one or more VWHS as a replacement part, which were manufactured or sold by the Settling Defendants or any other Defendant in this case, or any of their current or former subsidiaries, affiliates, or alleged co-conspirators.

TED Plaintiffs allege that, in furtherance of the alleged conspiracy or conspiracies, Defendants agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of VWHS and then sold those products at supracompetitive prices to Truck and Equipment OEMs, which in turn passed along the overcharges to Truck and Equipment Dealerships in the United States and elsewhere. *See*, *e.g.*, VWHS Complaint at ¶¶ 228-234.

The United States Department of Justice ("DOJ") has been investigating collusion by automotive parts manufacturers since at least February 2010, and the Federal Bureau of Investigation ("FBI") has participated in raids carried out in some of the offices of Settling Defendants and executed search warrants related to unfair competition, price-fixing, and bid rigging of certain automotive parts.  G.S. Electech and Yazaki pled guilty to violations of the Sherman Act, 15 U.S.C. § 1 as follows:

- G.S. Electech agreed to pay $2.75 million in fines and plead guilty to "participat[ing] in a combination and conspiracy to suppress and eliminate competition in the automotive industry by agreeing to rig bids for, and to fix, stabilize, and eliminate competition in the automotive industry by agreeing to rig bids for, and to fix stabilize, and maintain the prices of, speed sensor wire assemblies sold to an automobile manufacturer in the United States and elsewhere;" (*Id.* at ¶¶ 177-181)

- Yazaki Corporation agreed to pay a fine of $470 million and to plead guilty to three counts of violations of the Sherman Act, § 1 for its conspiracy with regard to VWHS and several other automotive components, "the second largest criminal fine obtained for a Sherman Act antitrust violation," according to the DOJ press

3

release describing Yazaki Corporation's agreement to plead guilty to the
allegations of anticompetitive conduct.; (*Id.* at ¶¶ 160-167);

The settlements between the TED Plaintiffs and Settling Defendants are meaningful and
substantial and will result in payments of $2,365,000 for the benefit of the respective Settlement
Class, a significant achievement in this litigation.  The monetary recovery from Settling
Defendants, alone, is substantial.  Two of the three settlements that are the subject of this motion
include provisions mandating certain cooperation by the two settling defendants. Those
provisions, together with the cooperation provisions in settlements with other Wire Harness case
defendants, a motion for preliminary approval of which is pending before the court, assisted
considerably in the negotiation of settlements with other defendants to the point that if the
settlements that are the subject of this motion and the pending motion receive final approval, all
of the TED Plaintiffs' outstanding claims in the Wire Harness case will have been resolved.

Should one or more of the other settlements in this case not receive final approval, the
sales of the settling Defendants' at issue in this Motion would remain in these cases for purposes
of computing the treble damages claims against the non-settling Defendants and shall be part of
any joint and several liability claims against those Defendants.  *See* Yazaki Settlement
Agreement ¶ 42; Sumitomo Settlement Agreement ¶ 51 ; G.S. Electech Settlement Agreement
¶ 66.  Thus, the TED Plaintiffs and the proposed Settlement Class would retain their ability to
recover from any non-settling Defendants the entire damages caused by the alleged conspiracies,
even those attributable to Settling Defendants, less only the amount paid by Settling Defendants
in settlement.

TED Plaintiffs and their counsel believe, for all the reasons set forth, that the proposed
settlements with Settling Defendants are in the best interest of the proposed members of the

Settlement Class and merits the Court's preliminary approval.  TED Plaintiffs therefore request the entry of an Order:

1. Preliminarily approving the Yazaki Settlement Agreement, Sumitomo Settlement Agreement, and G.S. Electech Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

3. Staying the proceedings against Settling Defendants in accordance with the terms of the respective Settlement Agreements;

4. Authorizing dissemination of class notice for the Settling Defendants' Settlement Agreements; and

5. Appointing undersigned counsel for TED Plaintiffs as Settlement Class Counsel for the settlements.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENTS

The Settling Defendants' Settlement Agreements are the result of arm's length and good faith negotiations.  Counsel participated in fact-gathering sessions and informational meetings, as well as extended negotiations, that took place through telephone calls, in-person meetings, and other communications.

**VWHS Settlement Class:**  The Settling Defendants' Settlement Agreements define the VWHS Settlement Class, which includes TED Plaintiffs, in nearly identical ways, as follows:

> all present or former Truck and Equipment dealers that, during the Class Period, (a) purchased Vehicle Wire Harness Systems manufactured or sold by a Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator of a Defendant; or (b) purchased Trucks and/or Equipment containing Vehicle Wire Harness Systems manufactured or sold by a Defendant or any current or former subsidiary of affiliate thereof, or any co-conspirator of a Defendant.

(Yazaki Settlement Agreement ¶ 9);

all Truck and Equipment dealers that, during the period January 1, 1999, through the Execution Date, purchased Vehicle Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any alleged co-conspirator; or purchased Trucks or Equipment containing Vehicle Wire Harness Systems manufactured by one of the Defendants or any current or former subsidiary, affiliate or alleged co-conspirator.

(Sumitomo Settlement Agreement ¶ 11); and

All Truck and Equipment Dealers that, during the period January 1, 1999, to the present, (the "Class Period"): a. purchased Vehicle Wire harness Systems manufactured by one of the Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator or b. purchased Trucks or Equipment containing Vehicle Wire harness Systems manufactured by one of the Defendants or any current or former subsidiary, affiliate or co-conspirator.

(G.S. Electech  Settlement Agreement ¶ 12).

**Settlement Amount:**  Yazaki has agreed to pay $1,500,00 into an escrow account within thirty (30) days following the latter of the date (a) the Court enters an order preliminarily approving this settlement set forth in Paragraph 19, or (b) Yazaki is provided with the account number, account name, and wiring transfer information for the Escrow Account.  Yazaki Settlement Agreement ¶ 26.  SEI, on behalf of Sumitomo, has agreed to pay $390,000 into an escrow account in United States Dollars within thirty (30) days following entry of an Order preliminarily approving this Agreement, or thirty (30) days following the provision of the necessary documentation and information of the Escrow Accounts to Sumitomo by Settlement Class Counsel, whichever is later.  Sumitomo Settlement Agreement ¶ 24.  G.S. Electech has agreed to pay $475,000 into an escrow account in United States Dollars to be administered within fourteen (14) days following entry of an order preliminarily approving this Agreement.  G.S. Electech Settlement Agreement ¶ 24.

6

**Cooperation:**  Two of the three settling Defendants—Sumitomo and G.S. Electech—have agreed to provide extensive cooperation to the proposed Settlement Class. Although this cooperation would become moot in the event that all of the Wire Harness settlements receive final approval, the pledges of cooperation, taken together with the pledges of cooperation in the settlements with the other Wire Harness case defendants that are the subject of the previously filed motion for preliminary approval presently pending before the Court, significantly aided in the negotiation of settlement agreements with other Wire Harness Defendants and led the parties to the threshold of a full and final resolution of all of the TED Plaintiffs' claims in the Wire Harness case.  The full extent of the pledged cooperation is set forth in the respective Settlement Agreements.

**Released Claims:**  As set forth more fully in the respective Settlement Agreements, the Settlement Agreements release only the Settling Defendants and their past and present parents, subsidiaries, affiliates, partners, and insurers (and their respective past and present officers, directors, employees, agents, stockholders, representatives, and insurers, and their respective predecessors, successors, heirs, executors, administrators, and assigns) from Settlement Class Members' and other Releasors' claims on account of, or in any way related to, the conduct alleged in the VWHS Complaint or any act or omission of Settling Defendants or any other Releasee concerning the sale of VWHS.

The releases do not include:  (1) any claims based on direct purchases of such parts, modules, or assemblies; (2) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties relating to such parts, modules, or assemblies; (3) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect,

7

warranty, securities, or similar claim relating to such parts, modules, or assemblies; and (4) claims under laws other than those of the United States relating to purchases made by Releasors outside of the United States. *See, e.g.*, Yazaki Settlement Agreement at ¶ 24. The Settlement Agreements also provide that the Settling Defendants' sales shall remain in the continuing litigation against the non-settling Defendants, who remain jointly and severally liable for all damages caused by the conspiracies, which would become relevant in the event that one or more of the Wire Harness case settlements presently before the Court for preliminary approval were not to receive final approval. *See, e.g.*, Yazaki Settlement Agreement at ¶ 42.

**Plan for Dissemination of Notice to Potential Members of the Settlement Class:**

Settling Defendants' Settlement Agreements provide cash benefits to dealerships that purchased certain parts and/or purchased vehicles containing those parts in jurisdictions that the TED Plaintiffs contend allow antitrust indirect purchasers to seek money damages: Arizona, Arkansas, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin (the "Included States"). Through a class action notice consultant, approximately 33,000 mailing and email addresses associated with potential class members in the Included States have been identified. (*See* Declaration of William Wickersham, attached hereto as Exhibit 4.)

To provide notice of these Settlements to potential class members, TED Plaintiffs propose a multi-faceted notice program intended to provide the best notice practicable under the circumstances. TED Plaintiffs retained RG/2, an experienced class action administration firm, to design and implement the notice plan. RG/2 has proposed the notice plan that includes:

- Direct mail and email notice to approximately 33,000 addresses related to dealerships potentially eligible for monetary benefits under the Settlements;

- Published notice in periodicals like *The Wall Street Journal*, *Automotive News*, National Trailer Dealers Association E-newsletter, the American Truck Dealers Insider E-newsletter, and *World Truck Magazine* designed to target potential class members nationwide; and

- Earned media efforts through a national press release and the settlement website, www.TruckDealerSettlement.com.

(*See* Wickersham Decl.)

## ARGUMENT

The Settlement Agreements are fair, reasonable, and adequate, and are the result of arm's length negotiations by experienced counsel.  They are also a thoughtfully conceived resolution of the proposed Settlement Class' claims that maximizes their recovery.

**I.      Preliminary Approval Should be Granted Because the Proposed Settlements Fall Well Within the Range of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions.  *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete."  *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'" (quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT

9

& ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); see also MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps.  First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement.  *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting*, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval."  *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006).  The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986).  Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only question . . . is whether the

10

settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement.  *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*").  These inquiries are reserved for the final approval stage of the class settlement approval process.  Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25.  Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved.  *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17-18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)).  *See also Packaged Ice*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court

may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted).

A court is not required, at the preliminary approval stage, to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

**A.      The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("*Linerboard*")); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have already been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.

Settling Defendants have asserted and would continue to assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to injury and damages, making the outcome of such trial uncertain for both parties. *See, e.g., Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that

12

Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at \*53-54 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g.*, *In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Hence, "the

13

certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. Settling Defendants' collective $2,365,000 in payments provides for significant compensation to the proposed Settlement Class that will be available years earlier than would be the case if litigation against Settling Defendants continued through trial and appeal. Taken together with the proceeds of the other Wire Harness settlements, the total proceeds from the settlements are in excess of $5 million—a figure that counsel for the TED Plaintiffs believes represents a very large share of the injury suffered by the class as a result of the alleged conduct that is the subject of the TED Plaintiffs' claims.

The respective Settlement Agreements also specifically provide that they do not alter the non-settling defendants' joint and several liability for the full damages caused by the alleged conspiracies, including all sales made by the Settling Defendants. *See, e.g.*, Yazaki Settlement Agreement ¶ 42. In this regard, the Settlement Agreement is similar to one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from the remaining defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its potential recovery" due to joint and several liability). Here too, should any of their pending settlements in

14

the Wire Harness case not receive final approval, the TED Plaintiffs would be able to pursue their full damages, with no diminution other than deduction of the actual Settlement Amounts in the settlements that do receive final approval.

**B.      The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel.**

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-length negotiations among experienced counsel. *Newberg* § 11.41. The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The respective Settlement Agreements here are the result of hard-fought negotiations between counsel experienced in complex antitrust and consumer class action litigation. The respective Settlement Agreements were negotiated by proposed Interim Class Counsel in a process that involved extensive discussions with counsel for Settling Defendants over a period of many weeks and months. Proposed Interim Class Counsel undertook a diligent and thorough

15

investigation of the legal and factual issues posed by this litigation and consulted extensively with experienced economists before negotiating this deal.

Counsel for the TED Plaintiffs was well-informed about the facts and the strength of the claims asserted having had access to extensive discovery, including document productions, interrogatory responses, and depositions, at the time the terms of the respective Settlement Agreements were negotiated.  *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary."  *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013).  There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.     The Proposed Settlement Class Should be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification.  *See, e.g., In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement Class, noting the court's earlier, preliminary approval of

the settlement Class granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b).  *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)).  Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("Amgen") (citing *Dukes*, 131 S. Ct. at 2552 n.6).  "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted).  Here, as

demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Class Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified in this District and elsewhere. TED Plaintiffs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010).  "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i.    The Proposed Settlement Class are so Numerous That it is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006).  A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005).  The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

The proposed Settlement Class at issue in this action involve all Truck and Equipment Dealerships in the United States from July 1, 1999, through the respective Execution Dates that purchased one or more new vehicles containing a VWHS.  Because there are a large number—estimated to be over one thousand—of such Truck and Equipment dealerships geographically distributed throughout the United States, joinder is highly impractical, if not impossible, for all of the proposed Settlement Class.

### ii.    TEDP Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions.

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy."  *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995).  Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist."  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also Newberg* § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held

19

that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the

Rule 23(a)(2) prerequisite").

Through the course of this litigation, TED Plaintiffs have already identified the following

issues common to the proposed Settlement Class:

- Whether Defendants and their alleged co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of or rig bids for VWHS installed in Trucks and Equipment sold in the United States;

- Whether Defendants and their alleged co-conspirators agreed to allocate the supply of VWHS installed in Trucks and Equipment sold in the United States;

- The identity of the participants of the alleged conspiracy;

- The duration of the alleged conspiracy and the acts carried out by Defendants and their alleged co-conspirators in furtherance of the conspiracy;

- Whether the alleged conspiracy violated the Sherman Act;

- Whether the alleged conspiracy violated state antitrust and unfair competition laws;

- Whether the conduct of Defendants and their co-conspirators, as alleged in the VWHS Complaint, caused injury to the business or property of Plaintiffs and the members of the Class;

- The effect of the alleged conspiracy on the prices of VWHS installed in Trucks and Equipment sold in the United States during the Class Period, if any;

- Whether the Defendants and their alleged co-conspirators fraudulently concealed the alleged conspiracy's existence from the Plaintiffs and the members of the Classes;

- Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants;

- The appropriate injunctive and related equitable relief for the Nationwide Class, if any; and

- The appropriate class-wide measure of damages for the Damages Class, if any.

20

*See* VWHS Complaint ¶ 240.  Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii.    TEDP Class Representatives' Claims are Typical of the Claims of the Members of the Proposed Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims.  *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it.  *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403.  "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members."  *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at *17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40 (same).

Because the TED Plaintiffs and the members of the proposed Settlement Class believe they are all victims of a common conspiracy to fix prices, rig bids, and allocate the market and customers for the relevant parts and seek the same relief, Rule 23(a)(3) is satisfied.  *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation

21

of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

> iv.     **Proposed Settlement Class Counsel and TEDP Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).  TED Plaintiffs submit that there are no conflicts between them and the proposed Settlement Class because the TED Plaintiffs and all Settlement Class Members purchased new Trucks and Equipment in the United States that included one or more VWHS as a component part, or indirectly purchased one or more VWHS as a replacement part, and all seek damages for the ensuing overcharge.  *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).  TED Plaintiffs and the members of the proposed Settlement Class also share a common interest in obtaining Settling Defendants' substantial cooperation in prosecuting the claims against any Defendant that is a party to a settlement agreement that does not receive final approval.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class.  The proposed Settlement Class is represented by counsel with extensive experience in antitrust and class action litigation.  They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial, as may be necessary.  *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation").  The Court should appoint them Settlement Class Counsel here.

**B.     The Proposed Settlement Class Meet the Requirements of Rule 23(b)(3).**

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).  With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620 (internal citations omitted).

**i.     Common Questions of Law and Fact Predominate.**

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof."  *In re Whirlpool Corp.*, 722 F.3d at 859.  Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'"  *In re*

*Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to TED Plaintiffs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court very recently instructed that "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S. Ct. at 1191.[2]

Because the proposed Settlement Class alleges conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants, the market impact of Defendants' conspiracy, and the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations—predominate over any

---

[2] The Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), supports the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S. Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Levva v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the proposed Settlement Class's claimed damages—the overcharge suffered as a result of inflated prices for VWHS—stem from the Defendants' alleged price-fixing conspiracy.

individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement.  *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)).  This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[3] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members.  *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class.  *See, e.g., In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class

---

[3] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); Foundry Resins, 242 F.R.D. at 408.

members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Class predominate in these cases—all TED Plaintiffs assert that they, along with the Truck and Equipment Dealerships they represent, paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Class.

ii.    **A Class Action is the Superior Method to Adjudicate These Claims.**

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of the members of the Settlement Class in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325-26 (finding that class action

26

is superior because it ensures fair and efficient adjudication). Thousands of Truck and Equipment dealerships purchased vehicles containing one or more VWHS as component parts during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g., In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[4]

### C.      The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23 (b)(2) where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ." Claims for non-monetary relief, like those asserted under state laws that do not recognize claims for money damages by indirect purchaser in antitrust actions, are properly certified under Rule 23(b)(2).

### III.    The Court Should Approve the Form and Manner of Notice to the Members of the TED Settlement Class.

Fed. R. Civ. P. 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." For Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under

---

[4] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

### A.    Notice Standards and Requirements.

The purpose of notice in a class action is to "afford members of the class due-process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)). Due process requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The "best notice practicable" does not mean actual notice, nor does it require individual mailed notice where there are no readily available records of class members' individual addresses or where it is otherwise impracticable. *See Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 548-53 (N.D. Ga. 1992); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004) ("MANUAL"). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standard imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975). Each class member need not receive actual notice for the due-process standard to be met, "so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362, 368 (S.D. N.Y. 1996).

Where names and addresses of known or potential class members are reasonably available, direct-mail notice should be provided. *See, e.g., Eisen*, 417 U.S. at 175-76; MANUAL,

§ 21.311, at 292. If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due-process clause and Rule 23. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950); *Carlough v. Amchem Prods.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993).

Due process is satisfied even if all class members do not receive actual notice, as long as the plan was reasonably likely to inform the persons affected. *See, e.g., Weigner v. The City of New York*, 852 F.2d 646, 649 (2d Cir. 1988). Whether a notice dissemination plan is reasonable is a function of the plan's anticipated results. *In re Domestic Air Transp.*, 141 F.R.D. at 539; see also *Berland v. Mack*, 48 F.R.D. 121, 129-30 (S.D.N.Y. 1969).

### B. The Proposed Manner of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1).

TED Plaintiffs propose providing notice through several different channels. Individual notice (the "Mailing Notice" Exhibit 1 to the Proposed Order) will be mailed to the more than 33,000 known postal and email addresses associated with current and former dealerships in the Included States. The Mailing Notice will direct recipients to a settlement website ("Settlement Website") for additional information. (*See* Ex. 1 to Proposed Order)

A summary notice (the "Publication Notice") will be published in: (1) one insertion in *The Wall Street Journal*, (2) one insertion in *Automotive News*, and (3) one insertion in *World Truck Magazine*. (Wickersham Decl.) The content of the Publication Notice will be the same as the Mailing Notice and will direct readers to the Settlement Website for further information. (*Id.*) A press release on a national newswire will be issued, directing readers to the Settlement Website for additional information. (*Id.*)

The Settlement Website will provide the definitions of the **Settlement Class**, a detailed description of the Settlements, the settlement agreements, and the long-form Mailing Notice (Ex.

1 to Proposed Order ) that describes the options for participating in, seeking exclusion from, or objecting to the Settlements.  The Settlement Website will also display, as the relevant information becomes available: (1) information about the proposed methods for allocating the settlement funds (the "Plans of Allocation"); (2) deadlines and Proof of Claim forms; (3) relevant court documents and filings; and (4) updates on the status of Court approval. The notices and the Settlement Website will also provide a toll-free telephone number that can be called for assistance or more information. (*See* Exs. 1 & 2 to Proposed Order).

To further supplement the Mailing and Publication notices, online notice efforts will also be used.  For example, the address of the Settlement Website will run in National Trailer Dealers Association E-newsletter and American Truck Dealers Insider E-newsletter (Wickersham Decl.)

The methods of notice proposed here are the best available under the circumstances. The proposed methods are well-designed to reach potential Settlement Class members and to comply with due process. Nearly all potential Settlement Class members in the Included States will receive direct, mailed notice. The substantial "reach" for these potential class members clearly satisfies due process requirements. *See, e.g., Larson v. Sprint Nextel Corp.*, No. 07-5325, 2009 WL 1228443, at *11 (D. N.J. April 30, 2009).  The "reach" of the notice proposed here far exceeds notice reach approved in other cases. *Id.* at *12. ("No case stands for the proposition that a publication notice reach of 49-53 percent is disallowed."). The Court should preliminarily approve the TED Plaintiffs' proposed notice plan and should allow the notice process to begin.

**C.     The Proposed Form of Notice Satisfies the Requirements of Fed. R. Civ. P. 23(c)(2)(B) and (e)(1).**

The content of a class action settlement notice "must clearly and concisely state in plain, easily understood language" seven types of information: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member

30

may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

The long form Mailing Notice and short-form Publication Notices are drafted in the "plain language" format preferred by federal courts and provide the information required by Rule 23. (*See* Wickersham Decl.)  The notices were drafted with assistance from RG/2, an experienced and well-regarded class action settlement administration firm. RG/2 believes that these notices are understandable and compliant with due process. (*Id.*) The notices satisfy the content requirements of Federal Rule of Civil Procedure 23.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 496 (D.N.J. 1997); MANUAL at § 21.633.

At final approval, the TED Plaintiffs will show that the form and content of the notices, together with the manners of dissemination, were reasonably calculated to reach the members of the Settlement Class and were the best form of notice available under the circumstances, in satisfaction of federal law and due process

### III.   The Proposed Notices Provide Class Members With Sufficient Information About the Details of the Settlements.

The notice plan also provides potential members of the Settlement Class with information about the benefits available under the Settlements, their options, and the service awards that may be requested at final approval.

Counsel for the TED Plaintiffs will seek reimbursement of certain of the litigation expenses already incurred during the course of the litigation of the cases involved in the Settlements.  *See, e.g.*, Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorneys' fees and untaxable costs that are authorized by law or by the parties'

31

agreement."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." (citation and internal quotation marks omitted.)).

The notice plan will also advise Settlement Class members that information about the Plans of Allocation of the proceeds of the Settlements will be published on the Settlement Website before the date that a decision about whether to participate in these Settlements must be made. TED Plaintiffs do not yet ask the Court to approve the Plans of Allocation and the Court may grant final approval before approving a plan of allocation. *See, e.g.*, MANUAL § 21.312 ("Often . . . the . . . details of allocation and distribution are not established until after the settlement is approved."); *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013) (district court gave final approval to a settlement without a plan of allocation, noting that "[o]nce the claim processing procedure is completed, plaintiffs will submit a proposed plan of allocation of the settlement proceeds for the Court's approval"); *Packaged Ice*, 2011 WL 717519, at *2, *17 (E.D. Mich. Feb. 22, 2011) ("[c]lass Counsel explained at the Fairness Hearing that the final plan of allocation was not included in the original Notice in part because of the potential for additional settlements with other Defendants which may affect the final plan of allocation," and finally approving the settlements that were presented, retaining jurisdiction to, among other things, "enter[] any Orders or conducting any hearings in connection with any final plan of distribution or claims submission process . . . . "); *see also In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 170 (2d Cir. 1987) ("To impose an absolute

requirement that a hearing on the fairness of a settlement follow adoption of a distribution plan would immensely complicate settlement negotiations and might so overburden the parties and the district court as to prevent either task from being accomplished."); *In re Washington Public Power Supply System Sec. Litig.*, [1989 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶94,326, at 92,143, 1988 WL 158947 (W.D. Wash. July 28, 1988) ("Such deferral of allocation decisions is routinely followed in partial settlements where the appropriate allocation among class members can best be determined when further settlements have been achieved or the litigation is completely resolved.").  Information about how the settlement money will be allocated through the Plans of Allocation will be published and submitted before the final approval hearing.

Class representatives are "an essential ingredient of any class action" and incentive awards are appropriate to induce a business or consumer to participate in worthy class action lawsuits. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 2008). "Such "[i]ncentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (citing *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 2005 WL 388562, at *31 (S.D.N.Y. Feb. 18, 2005)).

The notice plan advises Settlement Class members that interim service awards will be requested for the dealerships that have served as class representatives in these cases. These dealerships have sustained a significant discovery burden during the course of this case, having provided, through their common parent, significant document productions and a 30(b)(6) deposition. An award from the Court recognizing the class representatives' efforts will be appropriate. *See In re Prandin Direct Purchaser Antitrust Litig.*, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) (in a $19 million settlement, award of $50,000 to each class representative);

*In re Skelaxin Antitrust Litig.*, No. 12–cv–83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) (settlement of direct purchaser pharmaceutical antitrust action, awarding $50,000 to each class representative); *Connectivity Systems Inc. v. National City Bank*, 2011 WL 292008, at *20 (S.D. Ohio Jan. 26, 2011) (in $10 million settlement, awarding $50,000 each to three named plaintiffs); *Liberte Capital Group v. Capwill*, 2007 WL 2492461, at *3 (N.D. Ohio Aug. 29, 2007) (awarding $97,133.83 and $95,172.47 to two named plaintiffs representing subclasses that received $11 million and $7 million); *Hainey v. Parrott*, No. 1:02–cv–733, 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) (approving service award of $50,000 for each class representative); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535-36 (E.D. Mich. 2003) (awarding $75,000 to each class representative); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913–14 (S.D. Ohio 2001) (granting a $50,000 service award out of a $5.25 million fund); *In re Revco Sec. Litig.*, 1992 WL 118800, *7 (N.D. Ohio May 6, 1992) ($200,000 incentive award to named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards of $50,000 to six class representatives out of a settlement fund of $56.6 million).

The notice plan also provides notice of counsel for the TED Plaintiffs' intent to request an interim award of attorneys' fees and expenses as part of the final approval process. The Court may award attorneys' fees and expenses before the litigation is concluded. *See In re Air Cargo Shipping Serv. Litig.*, No. 06-md-1775 (JG) (VVP), 2011 WL 2909162, at *5-7 (E.D.N.Y., Jul. 15, 2011) (interim award granted); *In re Sterling Foster & Company, Inc. Sec. Litig.*, 238 F. Supp. 2d 480, 484-85, 489-90 (E.D.N.Y. 2002) (interim attorneys' fees awarded). Counsel for the TED Plaintiffs have litigated these cases for three years and will continue to vigorously represent the interests of dealerships. *See In re Diet Drugs Prod. Liab. Litig.*, 2002 WL

34

32154197, at *12 (E.D. Pa. Oct. 3, 2002) (awarding an interim fee after four years of litigation and noting "to make them wait any longer for at least some award would be grossly unfair").

## IV.    The Court Should Enter the Proposed Order, Which Schedules the Final Approval Hearing and Establishes Other Deadlines.

TED Plaintiffs respectfully request that the Court hold a single final approval hearing in connection with the Settlements. At the hearing, the Court should consider whether the Settlements are fair, reasonable, and adequate; whether to approve a request for interim attorneys' fees and reimbursement of litigation expenses; and whether to approve a request for initial service awards for the named TED Plaintiffs.

The proposed order sets out the method and timing of requests for exclusion and for submitting any objections to the Settlements. Other dates are also set out in the proposed order. The TED Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Mailing and E-mailing Mailing Notice, Establishment of Settlement Website | 30 days from Order allowing dissemination of notice |
| Commence Placement of Publication Notice | As soon as practicable from date of Order allowing dissemination of notice |
| Posting of information related to the Plans of Allocation on Settlement Website | October 20, 2016 |
| Filing of Motion in Support of Request for Attorneys' Fees, Reimbursement of Expenses, and Service Awards | October 20, 2016 |
| Deadline for filing Opt-Outs or objections to Settlements | October 28, 2016 |
| Deadline for appearance of counsel regarding objections | October 28, 2016 |
| Deadline for counsel to file notice of intent to appear at Final Approval Hearing | October 28, 2016 |
| Final Approval Hearing | November 17, 2016 at 2:30 p.m. |
| Proof of Claim deadline | March 31, 2017 |

## **CONCLUSION**

For the above reasons, TED Plaintiffs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1.  Preliminarily approving the Yazaki Settlement Agreement;

2.  Preliminarily approving the Sumitomo Settlement Agreement;

3.  Preliminarily approving the G.S. Electech Settlement Agreement;

4.  Provisionally certifying the proposed VWHS Settlement Class;

5.  Staying the proceedings against Settling Defendants in accordance with the terms of the respective Settlement Agreements;

6.  Authorizing Settlement Class Counsel to provide notice of the respective Settlement Agreements to members of the respective Settlement Class together with notice of the Settling Defendants' settlement in the form approved by the Court; and

7.  Appointing Interim Lead Class Counsel as the TED Plaintiffs as Settlement Class Counsel for these settlements.

DM1\7181318.4

Dated: September 8,  2016

/s/ J. Manly Parks
Wayne A. Mack (PA Bar #46654)
J. Manly Parks (PA Bar #74647)
Andrew R. Sperl (PA Bar #311467)
William Shotzbarger (PA Bar #320490)
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA  19103
Phone: (215) 979-1000
Fax: (215) 979-1020
wamack@duanemorris.com
jmparks@duanemorris.com

*Counsel for Truck and Equipment Dealer
Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that today I served the Foregoing Truck and Equipment Dealer Plaintiffs'

Motion for Preliminary Approval of Proposed Settlement with Settling Defendants and

Provisional Certification of Settlement Class with the Clerk of the Court using the ECF system

which will send notification of such filing to all of the ECF participants in this action.

Dated: September 8, 2016

/s/ J. Manly Parks
J. Manly Parks